**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARIO ALIANO, individually and on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | No. 16 C 3087 |
| **THE QUAKER OATS COMPANY,** | ) ) ) | Judge Rebecca R. Pallmeyer |
| **Defendant.** | ) | |
| **COURTNEY DREY, individually and on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | No. 16 C 4293 |
| **THE QUAKER OATS COMPANY,** | ) ) ) | |
| **Defendant.** | ) | |
| **KEVIN PHUNG, on behalf of himself and all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | No. 16 C 6215 |
| **THE QUAKER OATS COMPANY,** | ) ) ) | |
| **Defendant.** | ) | |
| **SOPHIA SAENZ, on behalf of herself and all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | No. 16 C 7395 |
| **THE QUAKER OATS COMPANY,** | ) ) ) | |
| **Defendant.** | ) | |

## **ORDER**

In separate cases now pending before this court, four Plaintiffs—Mario Aliano, Courtney Drey, Kevin Phung, and Sophia Saenz—have brought suit against Defendant The Quaker Oats Company. Plaintiffs allege that Defendant falsely represented that its oatmeal food products contain maple syrup or maple sugar, and each Plaintiff purports to represent a class of

individuals who purchased Defendant's food products as a result of Defendant's alleged false representations. Before any of the Plaintiffs filed their lawsuits, another plaintiff filed a substantially similar suit against Defendant in the Central District of California. *See Eisenlord v. Quaker Oats Co.*, Case No. 16 C 1442 (C.D. Cal.) (filed March 1, 2016). Defendant has moved to transfer [31] the related cases before this court to the Central District of California—or, in the alternative, to stay the cases pending resolution of *Eisenlord*—pursuant to the so-called "first-to-file rule." Another similar case that was brought against Defendant in New Jersey has already been transferred to the Central District of California. *See Gates v. Quaker Oats Co.*, No. 1:16-CV-01944-NLH-JS, 2016 WL 4154675, at *1 (D.N.J. Aug. 3, 2016). Plaintiffs contend that transfer would not be in the interest of justice and would be inconvenient to the parties and witnesses in their cases. For the reasons stated below, the court concludes that justice and convenience weigh in favor of transferring the cases to the Central District of California, but that Aliano's and Saenz's cases cannot be transferred there under 28 U.S.C. § 1404(a). Those cases will therefore be stayed pending resolution of *Eisenlord*.

## **BACKGROUND**

Defendant is a New Jersey Corporation with its principal place of business in Illinois. (Aliano Compl. [1] ¶ 6.)[1] Aliano, a resident and citizen of Illinois, alleges that he purchased Defendant's oatmeal at a retail grocery store in Illinois. (*Id.* ¶¶ 5, 25.) On March 11, 2016, he filed his suit against Defendant in this court, with a complaint that is nearly identical to, and reproduces many paragraphs verbatim from, the complaint in *Eisenlord*. (*See Eisenlord* Compl., Ex. D to Pl.'s Resp. to Def.'s Mot. to Transfer or Stay [33-4].) Saenz is another Illinois resident who alleges that she purchased Defendant's oatmeal at a store in Illinois. (Saenz Compl., Ex. A to Def.'s Notice of Removal ([1-1] in *Saenz v. The Quaker Oats Co.*, Case No. 16 C 7395 (N.D. Ill.) (hereinafter "*Saenz*")), ¶¶ 8–9.) She filed her case against Defendant in

---

[1] Citations to the record are to the docket in *Aliano v. Quaker Oats Co.*, Case No. 16 C 3087 (N.D. Ill.) (hereinafter "*Aliano*"), unless noted otherwise.

Illinois state court in June 2016, and Defendant later removed the case to federal court, pursuant to the Class Action Fairness Act of 2005, Pub. L. 109–2, 119 Stat. 4 (2005). (*See* Def.'s Notice of Removal ([1] in *Saenz*) ¶ 7.) Unlike Aliano and Saenz, Drey and Phung are residents and citizens of California. (*See* Drey Compl. ([1] in *Drey v. Quaker Oats Co.*, Case No. 16 C 4293 (N.D. Ill.) (hereinafter "*Drey*")), ¶ 6.; Phung Compl. ([1] in *Phung v. Quaker Oats Co.*, Case No. C 16 C 6215 (N.D. Ill.) (hereinafter "*Phung*")), ¶ 10.) They filed their cases in this district in April 2016 and June 2016, respectively. *Drey*, *Phung*, and *Saenz* have been reassigned to this court as related cases to *Aliano*.

On April 5, 2016, before Drey, Phung, and Saenz filed their suits, Aliano filed a motion before the United States Judicial Panel on Multidistrict Litigation ("J.P.M.L."), seeking transfer of the cases in *Eisenlord* and *Gates* to this district to be consolidated, along with his case, for pretrial proceedings. (*See* Pl.'s Mot. for Coordination or Consolidation and Transfer [16].) In support of his motion for consolidation, Aliano asserted that "the central factual allegations in each case are identical." (*Id.* at 2.) The J.P.M.L. denied Aliano's request to centralize the pretrial proceedings but noted that alternatives to centralization were available and invited the parties "to consider seeking a stay, dismissal or transfer of the later-filed cases under the 'first-to-file rule' to streamline this litigation." *In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Mktg. & Sales Practices Litig.*, No. MDL 2718, 2016 WL 3101830, at *2 (J.P.M.L. June 2, 2016). Following the decision of the J.P.M.L., Defendant filed its motion to stay or to transfer the cases to the Central District of California. Only Aliano and Phung have filed responses to Defendant's motion. The court discusses the parties' arguments below.

## **DISCUSSION**

The first-to-file rule permits district courts "to stay or transfer a federal suit 'for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court.'" *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004) (quoting *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993)). In the Seventh

Circuit, district courts may transfer a case under the first-to-file rule "so long as 'the principles that govern requests for transfer do not indicate otherwise.'" *Humphrey v. United Healthcare Servs., Inc.*, No. 14 C 1157, 2014 WL 3511498, at *3 (N.D. Ill. July 16, 2014) (quoting *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010)). Courts look to 28 U.S.C. § 1404, the federal change of venue statue, for the principles that govern transfer requests in each case. *Research Automation*, 626 F.3d at 978.

Under section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." To evaluate the "convenience of parties and witnesses," courts consider, among other factors, (1) the availability of and access to witnesses, (2) each party's access to and distance from resources in each forum, (3) the location of material events, and (4) the relative ease of access to sources of proof. *Research Automation*, 626 F.3d at 978. For the "interest of justice" evaluation, courts consider additional factors, including (1) docket congestion and likely speed to trial in the transferor and potential transferee forums, (2) each court's relative familiarity with the relevant law, (3) the respective desirability of resolving controversies in each locale, and (4) the relationship of each community to the controversy. *Id.* Importantly, the "interest of justice" element "may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id.*

**I.      Analysis of § 1404(a) Factors**

In this case, the convenience of parties and witnesses does not weigh strongly either in favor of or against transfer. Regarding the location of material events, it is true that Defendant is headquartered in Illinois, and thus it is likely that many of the decisions about the marketing of Defendant's products were made here. But it is also the case that Defendant's allegedly false representations were part of a nationwide marketing scheme. And although the fact that Defendant is headquartered in Illinois means that there may be marginally greater access to

sources of proof in Illinois, even Plaintiff Phung concedes that that factor is likely neutral in this case. (Pl. Phung's Opp'n to Def.'s Mot. To Transfer or Stay ([13] in *Phung*) at 5.) "With the advent of electronic discovery, where records are actually stored is less of a factor because documents now are easily scanned, stored, and electronically transmitted and moving them no longer creates the onerous burden it may once have imposed." *Camarena v. Vanderbilt Mortg. & Fin., Inc.*, No. 15 C 00656, 2015 WL 4036258, at *3 (N.D. Ill. July 1, 2015).

At first glance, it might appear that the Northern District of Illinois is a more convenient forum than the Central District of California because Plaintiffs Aliano and Saenz are from the district, Defendant has its headquarters here, and many of the company's witnesses are here. But upon closer inspection, it is not clear that keeping the cases here would be more convenient for the parties or witnesses. As Defendants point out, and Aliano does not dispute, Aliano (with his same counsel) has filed multiple actions in the Central District of California in the past two years and is still litigating those cases there. (Def.'s Mot. to Transfer or Stay [13] at 11–12.) Aliano can hardly claim, therefore, that litigating in that district would be inconvenient for him. Drey and Phung are California residents and thus cannot plausibly claim that the Northern District of Illinois is a more convenient forum for them. And although Defendant is headquartered here, its counsel are located in Los Angeles and Washington, D.C., and Defendant has consistently taken the position that it is equally convenient for it to litigate in California as in Illinois. *See Askin v. Quaker Oats Co.*, No. 11 CV 111, 2012 WL 517491, at *5 (N.D. Ill. Feb. 15, 2012) ("[A]lthough there may be more witnesses located in Illinois at Quaker's headquarters, Quaker asserts that document production can move forward as easily in California as in any other jurisdiction.") With regard to the convenience of witnesses, it is important to keep in mind that should the *Eisenlord* case proceed to discovery or to trial, witnesses will be deposed and expected to testify in a case in the Central District of California concerning the same subject matter as this case. Requiring those same witnesses to testify in this case as well does not appear to be a more convenient outcome. As another district court

recognized, when faced with a similar situation, "convenience should not be assessed in a vacuum." *Wiley v. Gerber Prod. Co.*, 667 F. Supp. 2d 171, 173 (D. Mass. 2009). The "proper inquiry is not whether [Illinois] is more convenient than California in the abstract but instead whether sanctioning a second, nearly identical action here is more convenient than transferring the case for the purpose of consolidation." *Id.* "When considered in that light, convenience weighs in favor of transfer." *Id.*

When the court steps back and analyzes the convenience factors with the understanding that the *Eisenlord* case will already be proceeding in California, it is difficult to conclude that the convenience of the parties and witnesses militates in favor of keeping Plaintiffs' cases in this district. And, notably, the "interest of justice" element may be determinative in particular cases "even if the convenience of the parties and witnesses might call for a different result." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986). Cases in which the interest-of-justice element may be determinative include those where there is related litigation in "a forum where consolidation is feasible." *Id.* at 221.

As with the convenience factors, the traditional interest-of-justice factors do not cut strongly in either direction. None of the parties has suggested that one of the districts has a more congested docket or would be slower to proceed to trial. True, some of the Plaintiffs assert claims under Illinois law, and this court may have some greater familiarity with Illinois law than a court in California, but Defendant asserts that there is a threshold question of federal preemption that is common to all the claims. This court has no greater expertise than any other federal court in evaluating that question, nor have Plaintiffs identified any unique or idiosyncratic aspect of Illinois law at issue here that would make this court's purported greater familiarity with Illinois law significant. Regarding the other traditional interest-of-justice factors, although Illinois has some interest in ensuring that its consumer-protection laws are enforced against its own companies, each state has an interest in ensuring that its consumer laws are enforced to prohibit unfair and deceptive acts of all companies. And because Defendant's sale and

marketing of the products at issue was nationwide, "there is no compelling community interest that would be preserved by the selection of one venue over another." *Lafleur v. Dollar Tree Stores, Inc.*, No. 1:11 CV 8473, 2012 WL 2280090, at *7 (N.D. Ill. June 18, 2012).

Ultimately, the interest-of-justice element "relates to the efficient administration of the court system." *Research Automation*, 626 F.3d at 978. Allowing separate suits to proceed in different districts—cases that involve the same defendant, seek the same remedy, and deal with substantially similar factual and legal issues—would not serve the efficient administration of the court system. *Cf. McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 889 (7th Cir. 2012) ("[A]llowing a separate [class-action] suit seeking the same remedy [from the same defendant] would be redundant."). As Aliano himself asserted in his memorandum before the J.P.M.L., the cases at issue here are "nearly identical," and allowing the cases to proceed in separate districts could lead to "duplication of discovery[,] . . . inconsistent pretrial rulings," and an inefficient use of the parties' and judiciary's resources. (Pl. Aliano's Mem. In Supp. of Coordination or Consolidation [17] at 1, 3.). Thus the efficient administration of the court system weighs in favor of transfer to the venue where the first "nearly identical" case was filed.[2]

## II. Propriety of Transferring *Aliano* and *Saenz*

For the reasons discussed above, the court believes that the convenience of the parties and witnesses and the interest of justice favor transferring the cases to the forum of the first-filed case. Phung raises an additional wrinkle, however. Seventh Circuit appears to authorize

---

[2] In most cases, courts give considerable weight to a plaintiff's choice of forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 843 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). That factor does not carry much weight here, for two reasons. First, to the extent that the cases would be best resolved in a single forum, the *Eisenlord* plaintiff's choice of forum should receive at least as much weight as any of Plaintiff's choices. Second, where plaintiffs file suits that are nearly identical to a previously-filed action in a different forum and then soon move to establish an MDL in their preferred forum, there is at least a basis for concern that the plaintiffs (or their counsel) are engaging in forum shopping. Such a concern would provide a reason to discount their choice of forum. *See Research Automation*, 626 F.3d at 979 n.2.

7

transfer of a case filed here to the district of an earlier-filed case only if section 1404(a) authorizes such a transfer of venue. *See Research Automation*, 626 F.3d at 982. As Phung points out, however, Defendant has not established that the Central District of California is a "district or division where [Aliano's case] might have been brought" initially under section 1404(a). The alleged activities giving rise to Aliano's claim in this case—Defendant's marketing and sale of its product and Aliano's purchase of the product—took place in Illinois. As a result, it is unlikely that there would be a sufficient link between the "forum and the underlying controversy" to allow the Central District of California to exercise specific personal jurisdiction over Defendant in a suit brought by Aliano. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). And none of the parties have shown that Defendant's contacts with California are so "constant and pervasive" as to render it "essentially at home" there, such that the Central District of California could exercise general personal jurisdiction over Defendant. *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014). Defendant, who is now seeking transfer to that district, would surely consent to personal jurisdiction there, but the Supreme Court has determined that a defendant's subsequent consent to jurisdiction is irrelevant to the question of "where [the case] might have been brought" initially. *Hoffman v. Blaski*, 363 U.S. 335, 342–43 (1960).

Defendant argues that because Aliano brings his suit on behalf of a nationwide class, including residents of California who purchased Defendant's products in California, the Central District of California would have had specific personal jurisdiction if Aliano had brought his suit there. This argument ignores that, for the determination of specific personal jurisdiction in a class action, "it is the named plaintiff's claim that must arise out of or result from the defendant's forum-related activities, not the claims of the unnamed members of the proposed class, who are not party to the litigation absent class certification." *Ambriz v. Coca Cola Co.*, No. 13-CV-03539-JST, 2014 WL 296159, at *6 (N.D. Cal. Jan. 27, 2014) (internal quotation marks omitted). Defendant also argues that the court should not consider whether Aliano's case could have

8

been brought in the Central District of California because Aliano himself never raised that argument and Phung, as a nonparty to Aliano's case, lacks standing to raise an argument on Aliano's behalf. This court, too, is uncertain that Phung technically has standing to make this argument. His case has been reassigned as related to Aliano's, however; Phung therefore does have an interest in whether Aliano's case is transferred, as that transfer might affect the propriety of transferring Phung's case. In any event, regardless whether Phung has standing to raise the argument, the court is inclined to consider it, in the same way that the court could consider the argument from an *amicus curiae* who is not a party to a case. *See Adams v. City of Chicago*, No. 94 C 5727, 1995 WL 491496, at *1 (N.D. Ill. Aug. 11, 1995) (citing cases to support the proposition that "whether to allow the participation of an *amicus curiae* is firmly within the discretion of the district court"). Defendant had the opportunity to respond to this argument after Phung raised it, and the court sees no reason to turn a blind eye to the issue.

The court concludes that it would be inappropriate to transfer Aliano's case to a district in which it could not have been brought initially. Because Saenz is also an Illinois plaintiff whose claim is based on conduct that occurred in Illinois, the court similarly concludes that it would be inappropriate to transfer her case. The court nevertheless stands by its conclusion that it would be an inefficient use of judicial resources to allow those plaintiffs' cases to proceed in this district at the same time that *Eisenlord* proceeds elsewhere. Thus the court will stay *Aliano* and *Saenz* pending resolution of *Eisenlord*. Of course, because both Aliano and Saenz are putative members of the class in *Eisenlord*, they are free to voluntarily dismiss their cases in this court in order to seek intervention in *Eisenlord* or to file suits in the Central District of California and seek consolidation with the other related cases.

**CONCLUSION**

For the reasons stated above, Defendant's motion to transfer or stay [Docket No. 31 in Case No. 16 C 3087; Docket No. 8 in Case No. 16 C 4293] is granted. Aliano's remaining pending motions [Docket Nos. 4, 7, 11] in Case No. 16 C 3087 are terminated. The Clerk is directed to transfer the cases of *Drey v. Quaker Oats Co.*, Case No. 16 C 4293 (N.D. Ill.), and *Phung v. Quaker Oats Co.*, Case No. C 16 C 6215 (N.D. Ill.) to the Central District of California. The cases of *Aliano v. Quaker Oats Co.*, Case No. 16 C 3087 (N.D. Ill.), and *Saenz v. The Quaker Oats Co.*, Case No. 16 C 7395 (N.D. Ill.), are stayed pending the resolution of *Eisenlord v. Quaker Oats Co.*, Case No. 16 C 1442 (C.D. Cal.) (filed March 1, 2016).

ENTER:

Dated: January 4, 2017

REBECCA R. PALLMEYER
United States District Judge